UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY BOYD,

        Plaintiff,

v.                             Case No. 8:15-cv-2928-T-33TBM

THE NORTHERN TRUST COMPANY,

        Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Plaintiff Jeffrey Boyd's Motion to Remand (Doc. # 18), filed on January 27, 2016. Defendant The Northern Trust Company filed a Response in Opposition on February 16, 2016. (Doc. # 24). For the reasons set forth below, the Court determines that it lacks subject matter jurisdiction and accordingly remands the action pursuant to 28 U.S.C. § 1447(c).

**I.   Background**

Boyd began his employment with Northern as Vice President during the spring of 1996. (Doc. # 2 at ¶ 7). When Boyd was 53 years old, he was demoted and replaced by a "younger and less qualified" employee. (Id. at ¶ 10). Boyd alleges that "Northern set unrealistic goals for the older employees in an effort to force them to resign or, alternatively, to set them up for eventual termination." (Id. at ¶ 16). Ultimately, "Boyd felt he had no choice

other than to resign his employment to try to salvage his career and dignity, resulting in his constructive termination on or about January 23, 2014." (Id. at ¶ 22).

On November 16, 2015, Boyd filed an age discrimination complaint against Northern in state court based on the Florida Civil Rights Act of 1992, as amended, §§ 760.01. (Doc. # 2). On December 23, 2015, Northern removed the case to this Court on the basis of complete diversity of citizenship. (Doc. # 1). Northern established that Boyd is a citizen of Florida and that Northern is an Illinois corporation with its principal place of business in Chicago, Illinois. (Id. at ¶¶ 7, 9).

Regarding the amount in controversy, Northern postulated that "while undefined, it is clear from the face of the Complaint and allegations pled that the claims exceed $75,000." (Id. at ¶ 12). On this point, Northern elaborated that "Plaintiff seeks compensation for 'back pay benefits,' 'front pay benefits in lieu of reinstatement due to the irreconcilable differences between the parties,' 'compensatory damages,' 'punitive damages,' 'pre-judgment and/or post-judgment interest,' and 'reasonable attorneys' fees, costs and other litigation expenses.'" (Id.).

Boyd has moved the Court for an Order of Remand and, in conjunction therewith, has filed a sealed declaration setting forth his earnings with a new employer as of the date of removal. (Doc. # 21).

## II. **Legal Standard**

Under 28 U.S.C. § 1441, a defendant can remove an action to a United States District Court if that court has original jurisdiction over the action. 28 U.S.C. § 1441(a). United States District Courts have original jurisdiction over all civil actions between parties of diverse citizenship where the amount in controversy exceeds $75,000.00. See 28 U.S.C. § 1332(a). Removal is proper if the complaint makes it "facially apparent" that the amount in controversy exceeds $75,000. Williams v. Best Buy, Co., 269 F.3d 1316, 1319 (11th Cir. 2001). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." Id.

In this case, it is undisputed that the parties are of diverse citizenship.  The only question is whether the amount in controversy exceeds the $75,000 jurisdictional

threshold. In the Complaint, Boyd has not specified the precise amount of damages sought in the lawsuit, instead alleging damages "in excess" of $15,000 for violations of the Florida Civil Rights Act. (Doc. # 2 at ¶ 5). Where, as here, "damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." Lowery v. Ala. Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007). "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).

### III. Analysis

As previously stated, the Complaint alleges damages "in excess" of $15,000 dollars. (Doc. # 2 at ¶ 5). Without any further specificity on damages, Northern, as the removing party, bears the burden of proving, by a preponderance of the evidence, that the amount in controversy is in excess of $75,000. See Lowery, 483 F.3d at 1208.

Northern's Notice of Removal posits that the amount in controversy is met because the relevant back pay exceeds $75,000. Northern also submits that in adducing the amount

4

in controversy, the Court may consider Boyd's pre-suit demand letter as well as his request for front pay, compensatory damages, punitive damages, and attorney's fees.

Both parties have submitted relevant wage information under seal arguing that this information is sensitive and proprietary. The Court has allowed the parties to file their information under seal, but declines to seal this Order of Remand, which discusses the relevant wage information in its jurisdictional analysis. The right of the public to access pending cases and the decisions rendered in those cases outweighs the parties' privacy interests in this employment discrimination action. As explained by the Eleventh Circuit in <u>Brown v. Advantage Engineering, Inc.</u>, 960 F.2d 1013, 1016 (11th Cir. 1992), "Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but is also the public's case." American courts recognize a general right "to inspect and copy public records and documents, including judicial records and documents." <u>Nixon v. Warner Comms., Inc.</u>, 435 U.S. 589, 597 (1978).

The Eleventh Circuit has noted, "The operation of the courts and the judicial conduct of judges are matters of

utmost public concern and the common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." Romero v. Drummond Co., 480 F.3d 1234, 1245 (11th Cir. 2007)(internal citations omitted).

**A. Back Pay**

The Court will begin its analysis by discussing back pay. It is undisputed that at the time of his separation from employment at Northern on July 25, 2014, Boyd's weekly earnings totaled approximately $2,932.69, such that his base annual salary was $152,500. (Doc. # 16 at ¶ 6). As such, his back pay claim, as articulated by Northern is $215,846.15 (earnings from the July 25, 2014, separation from employment to the date of removal on December 23, 2015). (Id. at ¶ 7).

However, Boyd has filed a competing declaration explaining that his earnings with a new employer exceed those he was making with Northern so as to completely obviate his back pay claim. Specifically, Boyd remarks that he earned $122,623.12 in 2014, and earned $241,359.54 in 2015, up to the date of removal. (Doc. # 21).

Northern contends that the Court should not consider mitigation of damages at the jurisdictional stage, citing Taylor v. Air Atlanta Icelandic, 11-60289-CIV-COHN/SELTZER, 2011 U.S. Dist. LEXIS 37949 (S.D. Fla. Mar. 25, 2011), as well as other cases. However, the Taylor case, which is not binding, is unpersuasive. In Taylor the plaintiff suggested that the court "should consider mitigation of damages . . . based upon his subsequent income;" however, the plaintiff did not "actually argue that he earned any subsequent income, much less offer evidence of subsequent income." Id. at *5. The court admonished the plaintiff that "a plaintiff, when faced with evidence that the amount in controversy exceeds the jurisdictional requirements, may not rely on theoretical possibilities, rather than its own rebuttal evidence, to avoid removal." Id.

Northern also points to Gehl v. Direct Transport, Ltd., 6:12-cv-1869-Orl-31DAB, 2013 U.S. Dist. LEXIS 4002 (M.D. Fla. Jan. 10, 2013). In Gehl, the plaintiff was injured in a serious car accident that occurred when a tractor-trailer driven by Direct Transport "collided with Plaintiff's car on Interstate 4 . . . causing [plaintiff's car] to spin counterclockwise across Interstate 4 and impact the

7

guardrail." Id. at *3. At the time of removal, it appeared that the plaintiff's medical expenses amounted to $113,562, satisfying the amount in controversy for diversity purposes. Id. at *7. The plaintiff sought remand based on a variety of unavailing arguments, one being that "undetermined 'set-offs and write-offs'" could reduce the incurred medical expenses of $113,562. Id. However, as in Taylor, the plaintiff did not provide any evidence regarding the extent that the claimed damages could be, or would be, reduced.

Here, rather than relying on the mere possibility of future mitigation, Boyd has filed a detailed declaration citing precise figures that demonstrates Boyd earned enough money to obviate and obliterate his own back pay claim as of the date of removal. In fact, attached to Northern's response to Boyd's Motion to Remand is Boyd's initial disclosures, in which Boyd states: "Plaintiff is not seeking back pay." (Doc. # 24-2 at 5). "Most courts consider mitigation when calculating back pay if the plaintiff submits affidavits or other evidence specifying the amount of mitigation." Fusco v. Victoria's Secret Stores, LLC, 806 F. Supp. 2d 1240, 1243 (M.D. Fla. 2011). Courts may consider post-removal evidence "if relevant to establish

8

facts that existed at the time of removal." Id. at 1245. See also Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir. 2000)("under any manner of proof, the jurisdictional facts that support removal must be judged at the time of removal, and any post-petition affidavits are allowable only if relevant to that period of time.").

Taking all of this into careful consideration, the Court is satisfied that Boyd's mitigated and completely withdrawn back pay claim cannot satisfy the jurisdictional minimum. See Love v. N. Tool & Equip. Co., No. 08-20453-CIV-COOKE/BANDSTRA, 2008 U.S. Dist. LEXIS 59110 at *7 (S.D. Fla. Aug. 1, 2008)(granting motion to remand and explaining: "In calculating a back pay award, the trial court must determine what the employee would have earned had she not been the victim of discrimination, and must subtract from this figure the amount of actual interim earnings.").

**B.   Front Pay**

Northern asserts in response to the Motion to Remand that even if the Court is not convinced that the back pay claim carries the day, Boyd's other requests for relief satisfy the amount in controversy. (Doc. # 24 at 4). Among

these claims are Boyd's demand for front pay, compensatory damages, punitive damages, and attorney's fees.

However, with respect to front pay, the parties have not provided any analysis or estimated amounts. In addition, as with the back pay, Boyd has indicated in his initial disclosures that he is no longer seeking front pay and that claim is withdrawn. This Court joins in the legion of tribunals finding that speculation regarding front pay cannot be used to supplement insufficient back pay for the purpose of meeting the jurisdictional requirement for diversity of citizenship. See, e.g., Snead v. AAR Mfg., Inc., No. 8:09-cv-1733-T-30EAJ, 2009 WL 3242013, at *2-3 (M.D. Fla. Oct. 6, 2009)(finding that "Defendant's calculations regarding front pay . . . are pure speculation"); Hammer v. CVS Pharmacy Inc. ex rel. Holiday CVS, L.L.C., No. 8:14-cv-3243-T-33EAJ, 2015 WL 438351, at *3 (M.D. Fla. Feb. 3, 2015)(finding that a speculative front pay amount could not be aggregated to back pay to meet the jurisdictional requirement).

### C. Compensatory Damages

In addition, while both parties agree that Boyd is seeking some form of compensatory damages, neither party has

come forward with an estimation of those damages or any analysis of those claims. As such, Boyd's claim for compensatory damages is too speculative to support a jurisdictional finding. See Golden v. Dodge-Markham Co., Inc., 1 F. Supp. 2d 1360, 1366 (M.D. Fla. 1998)(determining that compensatory damages were too nebulous to be considered in proving the jurisdictional amount by a preponderance of the evidence); Love, 2008 U.S. Dist. LEXIS 59110, at *13 (stating that although "[c]ourts have considered plaintiffs' claims for emotional distress damages in determining the amount in controversy," emotional distress damages are excluded if the parties present no evidence to determine the amount); Biffar v. GCA Serv. Grp., Inc., No. 8:15-cv-1154-T-33TGW, 2015 U.S. Dist. LEXIS 85790, at *7 (M.D. Fla. July 1, 2015)(declining to include potential compensatory damages in jurisdictional amount in controversy analysis).

### D. **Punitive Damages**

Northern also posits that Boyd's claim for punitive damages supplies the basis for finding that the amount in controversy exceeds $75,000. Northern explains that "a plaintiff may recover up to $100,000 in punitive damages under the FCRA" and "there is no indication that Plaintiff

11

is seeking less than the maximum amount of punitive damages under the FCRA." (Doc. # 24 at 14).

Northern asserts that Boyd's claim to punitive damages satisfies the jurisdictional minimum based on the court's statement in <u>Holley Equipment Co. v. Credit Alliance Corp.</u>, 821 F.2d 1531, 1535 (11th Cir. 1987), that "[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainty that such cannot be recovered."  However, the <u>Holley</u> court addressed the dismissal of a diversity action for lack of subject matter jurisdiction after it "determined to a legal certainty that Holley could not recover a sum in excess of $10,000 – the amount in controversy necessary to invoke diversity jurisdiction pursuant to 28 U.S.C. § 1332" in 1987. <u>Id.</u> That case was not decided in the context of removed case with a motion to remand filed by the plaintiff calling into question the jurisdictional minimum.  In addition, in <u>Holley</u>, the plaintiff made a claim for punitive damages in an amount that was in excess of the jurisdictional minimum.

In contrast, in this case, neither party has provided a persuasive discussion of Boyd's claim for punitive damages.

12

If the Court were to find that Boyd's undefined demand for punitive damages satisfied the jurisdictional minimum in this case, it would be a finding based upon rank speculation. In this regard, the Court relies on <u>McDaniel v. Fifth Third Bank</u>, 568 F. App'x 729 (11th Cir. 2014), in which an order of remand was vacated with an instruction to decide the case on the merits. There, the Eleventh Circuit instructed that: "A defendant seeking to remove based of a claim for punitive damages must affirmatively establish jurisdiction by proving jurisdictional facts that make it possible that punitive damages are in play." <u>Id.</u> at 732. Rather than proving jurisdictional facts, Northern simply points out that the complaint in this case includes a request for punitive damages. Following Northern's logic, every Florida Civil Rights Act case filed in state court containing a request for punitive damages would automatically meet the jurisdictional minimum for removal to federal court. That result would be untenable.

**E. Attorney's Fees**

In addition, while the Florida Civil Rights Act provides the Court with discretion to award attorney's fees a prevailing party, the parties have presented no discussion

13

of how much Boyd has allocated to attorney's fees as of the date of removal so that the Court may include this figure in the jurisdictional calculus. As explained in <u>Keller v. Jasper Contractors, Inc.</u>, No. 8:15-cv-1773-T-23TBM, 2015 U.S. Dist. LEXIS 106110, *3 (M.D. Fla. Aug. 12, 2015), a case in which the court sua sponte remanded a Florida Private Whistleblower's Act case, "only the attorney's fees accrued to the day of removal can contribute to the amount in controversy." The parties have not provided any information regarding the amount of attorney's fees accrued at the time of removal. And, there is no basis to find that the fees in this case reach an amount that could satisfy the jurisdictional minimum, even when considered in conjunction with Boyd's other claims.

**F.   Pre-suit Demand Letter**

Finally, Northern contends that the amount in controversy is satisfied based upon Boyd's submission to Northern of a pre-suit demand letter seeking the payment of $287,000.00. Northern has submitted a redacted version of that letter for the Court's assessment. (Doc. # 24-1).

The Court has evaluated the demand letter in question; however, a number of federal courts, including the present

14

Court, have held that settlement offers do not automatically establish the amount in controversy for purposes of diversity jurisdiction. Lamb v. State Farm Fire Mut. Auto. Ins. Co., No. 3:10-CV-615-J-32JRK, 2010 WL 6790539, at *2 (M.D. Fla. Nov. 5, 2010); Piazza v. Ambassador II JV, L.P., No. 8:10-CV-1582-T-23EAJ, 2010 WL 2889218, at *1 (M.D. Fla. July 21, 2010)("A settlement offer is relevant but not determinative of the amount in controversy.").

Instead, courts have analyzed whether demand letters merely "reflect puffing and posturing," or whether they provide "specific information to support the plaintiff's claim for damages" and thus offer a "reasonable assessment of the value of [the] claim." Lamb, 2010 WL 6790539, at *2 (quoting Jackson v. Select Portfolio Servicing, Inc., 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009)); Piazza, 2010 WL 2889218, at *1 ("a settlement demand provides only marginal evidence of the amount in controversy because the plaintiff's letter is nothing more than posturing by plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages' sought by the plaintiff.").

Upon review, this Court finds that Boyd's demand reflects mere posturing rather than a reasonable assessment of the value of his claim. The demand letter before the Court contains no analysis of why Boyd's claim is worth $287,000.00 or any other amount. Boyd's letter indicates that this figure represents "actual financial losses and attorney's fees" but provides no breakdown so that the Court can understand how counsel arrived at the amount demanded. See Johnson v. Liberty Mut. Ins. Co., No. 8:13-cv-491, 2013 WL 1503109, at *4 (M.D. Fla. Apr. 12, 2013) (finding that the pre-suit demand letter was a general demand as it contained no specific information as to the amount of damages sustained by plaintiff); Standridge v. Wal-Mart Stores, 945 F. Supp. 252, 256 (N.D. Ga. 1996)(holding that a pre-suit demand letter was "nothing more than posturing by plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages plaintiff is seeking.").

That Boyd offered to settle his case for more than $75,000 does not establish by a preponderance of the evidence that the amount in controversy requirement is

16

met. See Daniel v. Nationpoint, No. 2:07-cv-640, 2007 U.S. Dist. LEXIS 93367, at *5 (M.D. Ala. Dec. 19, 2007).

In addition, that the demand letter was presented prior to the initiation of this suit further erodes its value for the purposes of determining the amount in controversy. A number of courts have indicated that pre-suit demand letters (as opposed to offers to settle after the filing of the complaint), are often worthy of very little consideration. See, e.g., Elder v. TFAL, Inc., 2007 U.S. Dist. LEXIS 82123, at *8 (N.D. Ga. Oct. 31, 2007) (in the context of determining amount in controversy, giving "little weight" to a demand letter submitted prior to the filing of the complaint); Saberton v. Sears Roebuck & Co., 392 F. Supp. 2d 1358, 1360 (M.D. Fla. 2005)("Although case law permits the use of post-suit demand letters in determining the amount in controversy requirement, [a] pre-suit demand letter will not be considered."). Thus, the Court finds that the demand letter does not establish the amount in controversy.

**IV. Conclusion**

Federal jurisdiction is limited, and removal statutes are construed narrowly and uncertainties are resolved in favor of remand. Burns, 31 F.3d at 1095. Northern, as the

removing party, has not shown by a preponderance of the evidence that the amount in controversy is in excess of $75,000. Therefore, the Court remands the case to state court. See 28 U.S.C. § 1447 ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Jeffrey Boyd's Motion to Remand (Doc. # 18) is **GRANTED.**

(2) This action is remanded under 28 U.S.C. § 1447(c) for failure of the removing party to invoke federal jurisdiction.

(3) The Clerk is directed to remand this case to state court. After remand has been effected, the Clerk shall **CLOSE THIS CASE**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 18th day of February, 2016.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE